DRIVE IN THEATRES, INC., t/a Midway Drive In Theatre, Appellee,

v.

Damon HUSKEY, Sheriff of Rutherford County, North Carolina, Appellant.

No. 14120.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 9, 1970.

Decided Nov. 23, 1970.

J. Nat Hamrick, Rutherfordton, N.C. (Hamrick & Hamrick, Rutherfordton, N.C., on the brief), for appellant.

Norman B. Smith, Greensboro, N.C. (Smith & Patterson, Greensboro, N.C., George Daly, Jr., and Casey & Daly, Charlotte, N.C., Adam Stein, and Chambers, Stein, Ferguson & Lanning, Charlotte, N.C., on the brief), for appellee.

Before HAYNSWORTH, Chief Judge, and WINTER and CRAVEN, Circuit Judges.

CRAVEN, Circuit Judge:

In the summer of 1969 Damon Huskey, a dedicated law enforcement officer and high sheriff of Rutherford County,

North Carolina, became gravely concerned about the kind of motion pictures being shown at the various theaters, indoor and outdoor, within the county. Becoming convinced that most of the movies exhibited were detrimental to the good morals of the people of Rutherford County, the sheriff undertook a campaign to suppress the exhibition of all films except those recommended by the motion picture industry for general audiences. For a while he was remarkably successful. At least one guilty plea was obtained under a criminal charge based on the North Carolina obscenity statute, the constitutional validity of which is now being considered by a three judge court.[1] Several films were seized by the sheriff and their exhibition terminated. In newspaper interviews and statements over the radio, the sheriff gave it as his considered opinion that all films except those rated for general audiences were considered by him to be obscene, threatened prosecution of persons exhibiting "X" and "R" rated films, and declared his intention to confiscate all adult rated films if any attempt was made to exhibit them in Rutherford County. J. W. Griffin, a theater owner who is not a party to this action, was told that he would be arrested and the film "Where Eagles Dare" would be confiscated if he undertook to show it. Another theater, Tri-City Drive-In, temporarily suspended operations under threat of prosecution for showing the film "Candy". The success of the campaign was pretty well summed up by the Forest City Courier on Monday, August 18, with the headline "Sheriff Bans All Adult Movies".

The sheriff proved such an effective censor that from August 20, 1969, until October 9, 1969, the date of the Order from which the appeal is entered, the plaintiffs discontinued entirely showing adult rated films. The district judge found from the evidence that the public, faced with a steady diet of "G" movies, stayed away in droves, and that the effect of the ban would have been to put the plaintiff out of business. Believing that the conduct of the sheriff, however well intended, violated the First Amendment as applied to the states by the Fourteenth Amendment, the district judge, on October 9, 1969, effectively restrained further censorship activity by the sheriff and this appeal followed. We affirm.

▮▮▮ Assuming without deciding that the exhibition of obscene motion pictures is unlawful in North Carolina under constitutional enactments of the state legislature, it is clear that the sheriff's conduct and activity cannot be tolerated in a free society. The First Amendment to the Constitution of the United States guarantees to the people freedom of speech. Motion pictures are "speech" within the meaning of the Amendment. Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). As long ago as 1931 Chief Justice Hughes writing for the United States Supreme Court firmly established the doctrine of "prior restraint". "In determining the extent of constitutional protection, [of free speech] it has been generally, if not universally, considered that it is the chief purpose of the guaranty to prevent previous restraints upon publication." Near v. Minnesota, 283 U.S. 697, 713, 51 S.Ct. 625, 630, 75 L.Ed. 1357 (1931).

What the sheriff has done in Rutherford County is quite similar to the activity of Rhode Island's Commission to Encourage Morality in Youth, described in Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963). The Rhode Island Commission periodically sent out a list of "objectionable" books to book dealers, police and the state attorney general. With the list went a notice warning that the attorney general would act for the Commission in case of noncompliance. Frequently, after the list was distributed, a police officer would visit the book dealer to check on compliance. The Supreme Court declared the Commission's activities an un-

---

1. Shinall v. Worrell, 319 F.Supp. 485.

constitutional prior restraint. The court qualified its previous dictum that obscenity is not within the area of constitutionally protected speech, Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), and held that even as to obscenity a state is not free to adopt whatever procedures it pleases without regard to the possible consequences for constitutionally protected speech. The court looked through form to substance and unequivocally condemned "informal sanctions—the threat of invoking legal sanctions and other means of coercion, persuasion, and intimidation * * *." 372 U.S. at 67, 83 S.Ct. at 637. In a footnote replete with citations of authority the court noted that "Threats of prosecution * * * on the part of chiefs of police or prosecutors, have been enjoined in a number of cases." 372 U.S. at 67, fn. 8, 83 S.Ct. at 638.

Speaking of the censorship activity of the Rhode Island Commission, the court said, "People do not lightly disregard public officers' thinly veiled threats to institute criminal proceedings against them if they do not come around, * * *." 372 U.S. at 68, 83 S.Ct. at 638. The only difference we see between the unlawful censorship activity of the Rhode Island Commission and the censorship activity of Sheriff Huskey is that he was not subtle and his threats were not veiled.

In Freedman v. Maryland, *supra,* the court spoke prophetically and seemed to anticipate the ease with which Sheriff Huskey imposed his will on the motion picture exhibitors of Rutherford County. "Particularly in the case of motion pictures, it may take very little to deter exhibition in a given locality. The exhibitor's stake in any one picture may be insufficient to warrant a protracted and onerous course of litigation." 380 U.S. at 59, 85 S.Ct. at 739.

 We hold that the sheriff's method of informal censorship was an unconstitutional prior administrative restraint on free speech and unconstitutional as a violation of the First and Fourteenth Amendments of the Constitution. Such a prior restraint can be "tolerated * * * only where it operate[s] under judicial superintendence and assure[s] an almost immediate judicial determination of the validity of the restraint". Bantam Books, Inc. v. Sullivan, *supra,* 372 U.S. at 70, 83 S.Ct. at 639.

Apparently the sheriff undertook the censorship activity in the belief that obscene movies are without constitutional protection and that he was himself authorized by law to make the determination of obscenity in any manner he saw fit, including reliance upon ratings of the motion picture industry. He is mistaken. Tyrone, Inc. v. Wilkinson, 410 F.2d 639, 641 (4th Cir.), cert. denied 396 U.S. 985, 90 S.Ct. 477, 478, 24 L.Ed.2d 449 (1969). In A Quantity of Copies of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964), the Supreme Court flatly rejected the argument that obscene material is contraband as are narcotics and gambling paraphernalia. Moreover, the court has always had more difficulty than has Sheriff Huskey in defining and determining what is obscene. It has been noted more than once that constitutionally protected expression is often separated from obscenity "only by a dim and uncertain line." Bantam Books, Inc. v. Sullivan, *supra,* 372 U.S. at 66, 83 S.Ct. at 637. "The separation of legitimate from illegitimate speech calls for * * * more sensitive tools * * *." Speiser v. Randall, 357 U.S. 513, 525, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460 (1958), as quoted in *Bantam Books, Inc., supra.*

 Because of the difficulty of defining obscenity, and applying the definition to the facts of a given case, it is now established that even obscene material may not be lawfully seized without a prior judicial adversary proceeding on the issue of obscenity, at which both sides have an opportunity to be heard. A Quantity of Copies of Books v. Kansas, *supra.*

During oral argument we indicated to counsel our uncertainty as to whether

the injunctive language of the district court was meant to prevent arrests without a prior adversary proceeding or searches and seizures without such a proceeding. Counsel for appellee agreed that the language might reasonably be interpreted to mean either or both, but consented that we interpret and treat the Order as not restraining the sheriff from making bona fide arrests of motion picture exhibitors in cases where he may have probable cause for believing that exhibition is a violation of a constitutional law of North Carolina undertaking to regulate obscenity. We accept the limiting construction suggested by appellee and thus need not decide whether the doctrine of prior restraint may be applied to prevent arrests prior to an adversary determination of the obscenity issue. But see Milky Way v. Leary, 305 F.Supp. 288 (1969), aff'd, 397 U.S. 98, 90 S.Ct. 817, 25 L.Ed.2d 78 (1970).

Affirmed.