**UNITED ARTISTS CORPORATION,**
**Plaintiff,**

v.

**Harold GLADWELL, Individually and as**
**Sheriff of Erie County, Ohio,**
**Defendant.**

**Civ. No. C 73-487.**

United States District Court,
N. D. Ohio, W. D.

March 11, 1974.

Arnold F. Bunge, Jr., Toledo, Ohio, George A. Howells, Sandusky, Ohio, William M. Pinzler, New York City, for plaintiff.

David C. Gibbs, Jr., Fairview Park, Ohio, John E. Shepherd, Rocky River, Ohio, for defendant.

## MEMORANDUM

DON J. YOUNG, District Judge:

This matter was heard on a motion for a preliminary injunction in an action for declaratory judgment as to the applicability of certain sections of the Ohio Revised Code, and as to their constitutionality if applicable, to a motion picture "Last Tango in Paris." This picture is being distributed by the plaintiff. The defendant, who is the Sheriff of Erie County, Ohio, threatened to file criminal charges against any motion picture exhibitor who dared to exhibit the picture in his bailiwick. As a result of the defendant's threats, a scheduled exhibition of the motion picture was cancelled, and no exhibitor has been willing to risk the defendant's ire by showing the picture.

A temporary restraining order was refused, because of the complexity of the problems involved, and the matter was heard upon plaintiff's motion for a preliminary injunction. At or immediately before the time of hearing on the motion, the defendant filed a motion to dismiss upon the ground that the complaint fails to state a cause of action.

The evidence at the hearing was for all practical purposes without conflict. It demonstrated that plaintiff had con-

tracted with a local film exhibitor to exhibit "Last Tango in Paris." Before doing so, a private showing of the film was arranged, to which the defendant and other local officials, including the Prosecuting Attorney and the Police Prosecutor, were invited. The prosecutors attended, but the defendant did not, although he sent a deputy. After the showing, the prosecutors made public statements that the picture did not violate the state obscenity statutes, but the defendant made public statements that it did.

On the evening of the first scheduled showing of the film, the defendant and a deputy came to the theatre and told the manager that he (the defendant) did not appreciate the showing of the film, and if the manager exhibited it, a complaint would be filed with the Prosecuting Attorney. The manager consulted by telephone with his superior, refunded their admissions to the patrons already seated in the theatre, and did not show the film.

The defendant continued his public denouncements of the film as obscene.

The Prosecuting Attorney did not testify, but the Police Prosecutor, who would be responsible for prosecuting the misdemeanor charge, the only charge the defendant could have filed under the Ohio law, testified that while he did not believe the film was obscene, if the defendant filed a complaint, he would prosecute it.

The evidence showed that the plaintiff could have expected to realize earnings of approximately fifteen thousand dollars from the exhibition of the picture in Erie County; that such films were "wasting assets," in that the longer the interval between the original release and the date of exhibition, the less the revenue that would be realized.

■ Although the plaintiff had produced a large number of witnesses to testify as to the matter of the obscenity of the film, the Court declined to hear them, but did permit both plaintiff and defendant to file depositions of experts

concerning this matter. The Court declined to hear testimony on this matter because it is clear that under the decision in Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), there could be no reasonable contention that the work, taken as a whole, lacks serious literary or artistic value. This is clearly demonstrated by the testimony of the two expert witnesses. Both of them obviously considered the work as a serious artistic effort. Plaintiff's expert testified that it was not obscene, because the director of the picture succeeded in attaining his artistic purpose. Defendant's expert testified that it was obscene, because the director failed to attain his artistic purpose. Both thus agree that the picture did have a serious artistic purpose. Obviously, whether the artist succeeds or fails in achieving his purpose is no test of the seriousness of the work or its purpose. The picture involved here is a highly controversial one. The First Amendment is designed to protect the right to be controversial, and to let the public, and not some censor, resolve the controversy.

In addition to this, the defendant has cited no ruling of any court holding the film to be obscene although the plaintiff has cited several that it was not. Neither has defendant disputed plaintiff's assertion that the picture has been exhibited in numerous theatres in Ohio, and throughout the country.

Thus we are presented with a case in which the defendant, by virtue of the power of his office, is able to deny the plaintiff its right to exhibit, and the public its right to see, a controversial motion picture.

■ In his motion to dismiss, the defendant spins a web of sophistry in his arguments that the complaint should be dismissed. His first claim is that any citizen could file a complaint, and he as sheriff has no higher standing than any other citizen if he files a complaint, since whether, or how, the complaint will be prosecuted is the responsibility of the prosecutor.

Not only does the evidence give the lie to this contention, for the Police Prosecutor stated that any complaint filed by the sheriff would be prosecuted, while the same complaint filed by a private citizen might not be, but the Supreme Court has previously addressed itself to this argument,

> "People do not lightly disregard public officers' thinly veiled threats to institute criminal proceedings against them if they do not come around . . ." Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 68, 83 S.Ct. 631, 638, 9 L.Ed.2d 584 (1963).

There was nothing thinly veiled about the defendant's threats. They were direct and positive. The evidence made it clear that at the very least, any exhibitor of motion pictures in Erie County would have to defend litigation, to his expense and trouble, if he dared to exhibit the plaintiff's film.

■ The defendant's contention that the facts here do not constitute a controversy can hardly be taken seriously. The very case that defendant cites, Evers v. Dwyer, 358 U.S. 202, 79 S.Ct. 178, 3 L.Ed.2d 222 (1958), holds that a person does not have to subject himself to an actual arrest to demonstrate the existence of a controversy. Evers v. Dwyer, *supra*, at 204, 79 S.Ct. 178. In a very similar case, involving the same plaintiff and the same film as the present case, a three-judge district court demolished this contention, saying, "In such cases as this, it is necessary that distributors as well as exhibitors have standing." United Artists Corp. v. Wright, Jr. et al., 368 F.Supp. 1034 at page 1037 (D. C.M.D.Ala.N.Div.1974).

The defendant next contends that under the cases of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 29 L.Ed.2d 669 (1971) and Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971) the court may not enjoin a state criminal prosecution begun prior to a federal suit. The applicability of those cases to the present situation is doubtful, since not only has no state criminal prosecution been begun, but the evidence clearly shows that none will be, since no one who is in a position to do so will risk taking the action that would be a necessary predicate for state criminal proceedings.

■ However, it is clear that the cases cited by the defendant do not overrule Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1968) which holds that federal injunction will lie to prevent harassment by prosecutions which the state officers know cannot succeed. Since everyone is presumed to know the law, the defendant cannot pretend, particularly in the face of the facts which were shown in evidence, and of which he must have been aware, that he did not know that any prosecution he launched would ultimately fail to gain a conviction.

■ The defendant's third contention is that the complaint fails to state a cause of action because the defendant's actions have not deprived plaintiff of any right because his filing a complaint with the prosecutor has no legal effect whatsoever.

The law does not exist in a vacuum of facts. Both human experience and the undisputed evidence in this case show that in fact any complaint the defendant filed would be prosecuted, and that in fact, the mere threat of a police officer to file a complaint will in most cases result in the person threatened desisting from his contemplated action, even though the action may be entirely legal, and the threat an abuse of the power of officer.

The defendant's argument in this regard is offensive to reason, to justice, and to law. If accepted, it destroys both the constitution and the law, and substitutes for them the will of every petty tyrant who can clothe himself with police authority.

■ The defendant's fourth argument, that the plaintiff has not alleged "special circumstances that require injunctive relief" is based upon a case, Cinema of Pittsfield, Inc. v. Ryan, 422

F.2d 1400 (1 Cir. 1970), which is totally different upon its facts from the present case, since it involves an exhibitor, and not a distributor. The court's own language at page 1402 of that case distinguishes it from the present when it says, "Plaintiff's rights do not depend on the willingness of third parties to risk prosecution. It can do so on its own account." Clearly, the plaintiff here cannot risk prosecution on its own account. If it could, it no doubt would, considering the stakes involved, and this Court would be happy to let the state courts resolve the problem. However, it is clear from the evidence in this case that no third party is willing to risk the defendant's wrath, nor is there any legal way by which the plaintiff can compel anyone to.

Defendant would have this Court disregard the ancient maxim *"Ubi est jus ibi est remedium."* Plaintiff has a right to sell its wares, and cannot be without a remedy for defendant's action in depriving it of that right.

██ It is clear from the evidence that the plaintiff's motion picture is a "wasting asset", in that the longer the time that elapses between the original release date of the picture and the time it is exhibited in a particular market, the lower will be the return realized from the exhibition. Thus quite apart from the question of the irreparability of harm which results from the mere interference with First Amendment rights, the plaintiff has already suffered, and will continue increasingly to suffer, measurable pecuniary loss as the result of delay in exhibiting its motion picture.

It is equally clear that there is a very strong probability that upon a final hearing on the merits of its case, plaintiff will succeed in gaining the right to exhibit its picture without interference by the defendant.

Finally, it is difficult to see what harm would be done to the defendant by being restrained from abusing his powers, while the harm to the plaintiff from further delay is substantial and increasing.

One of the realities of life and law is that once a person assumes a public office, and so long as he continues in it, he cannot completely separate his personal and official acts. If an officer does not wish the restraints which the law imposes upon his official actions to bind him in his personal actions, he must give up his office. If, therefore, the defendant is to be restrained, he must be restrained both as the Sheriff of Erie County and as an individual.

The Court concludes that in this posture of the case, the equities are with the plaintiff, and that pending final hearing in this cause, the defendant, his successors in office, his deputies, agents, servants, employees, and all persons in active concert or participation with him, be enjoined from suppressing or interfering with the exhibition of the motion picture "Last Tango in Paris," and from coercing, threatening, frightening and intimidating exhibitors or prospective exhibitors, theatre managers, or their agents, servants, or employees who are considering exhibiting, or planning to, or do exhibit, the plaintiff's said motion picture. Bond for such injunction is fixed in the amount of Five Hundred Dollars ($500.00).

The motion of the defendant to dismiss the complaint will be overruled.

This memorandum will serve as the Court's findings of fact and conclusions of law. Plaintiff may prepare and submit an order expressive of the Court's ruling in accordance with the L.Civ.R.