The AMERICAN CIVIL LIBERTIES UNION, Greater Pittsburgh Chapter, Inc., a Pennsylvania Corporation; Sam Moore; Barbara Paull; and Daniel Milberg, individuals who reside in the City of Pittsburgh, Plaintiffs,

v.

CITY OF PITTSBURGH, a Home Rule Charter Municipality; Richard S. Caliguiri, individually and as Mayor of the City of Pittsburgh, Defendants.

Civ. A. No. 84–984.

United States District Court, W.D. Pennsylvania, Pittsburgh Division.

April 24, 1984.

---

418

Rochelle S. Friedman, Michael P. Malakoff, Thomas M. Kerr, Pittsburgh, Pa., for plaintiffs.

Marvin A. Fein, Pittsburgh, Pa., for defendants.

OPINION

SIMMONS, District Judge.

Today this Court is called upon to review the legality of actions taken by a local public official in calling for the removal of *Hustler* magazine from local newsstands. This is not an obscenity case; nor does this Court rule on the obscenity of *Hustler* magazine.

## I. Background.

This is an action for injunctive and declaratory relief under 42 U.S.C. §§ 1983 and 1988 and under the First and Fourteenth Amendments to the United States Constitution. In this action the plaintiffs seek to enjoin the City of Pittsburgh, acting through its Mayor, Richard S. Caligiuri, and other City employees, from prohibiting the exhibition, distribution and sale of the May, 1984 edition of *Hustler* magazine.

On April 17, 1984, plain clothes City police officers were dispatched to local newsstands to determine whether the May, 1984 edition of *Hustler* was being distributed. After the police surveillance determined that the magazine was being sold, Mayor Caliguiri released a letter to local media organizations addressed to "all magazine and news dealers." In his open letter, the Mayor expressed his personal distaste of the contents of *Hustler* magazine and "urge[d] every business person who sells Hustler to immediately remove the so called Easter edition from their shelves...." In concluding, the Mayor noted that the news dealers "cooperation [would] eliminate the need for the City to engage in a massive sweep of all news stands and stores and the initiation of criminal proceedings...." [1]

---

1. The letter which was released on the Mayor's stationary provides as follows:

 To all magazine and newsdealers:

 I have been informed of the contents of this month's edition of Hustler Magazine and am outraged that a publisher would distribute so offensive and distasteful a magazine, especially during this religious season.

 In other cities, news dealers have voluntarily refused to sell this edition of Hustler. As a sign of your commitment to this City and its citizens, I urge every business person who sells Hustler to immediately remove the so called Easter edition from their shelves and send all copies to the publisher or distributor.

 Your cooperation will eliminate the need for the City to engage in a massive sweep of all newsstands and stores and the initiation of criminal proceedings under state and local

Subsequently, police officers were again dispatched to survey newsstands. This time the police failed to find a single copy of the magazine.

On the basis of the Mayor's action, the American Civil Liberties Union (ACLU) and several named plaintiffs filed this suit seeking injunctive and declaratory relief. In short, the ACLU contends that the Mayor's conduct amounts to an unconstitutional prior restraint on First Amendment freedoms in that it "chilled" the plaintiffs rights to secure constitutionally protected information.

Because no vendors are named plaintiffs, the City contends that the ACLU has no standing to bring this action. In addition, the City asserts that the Mayor's conduct did not rise to the level of a prior restraint because it merely called for voluntary compliance with state and local obscenity laws; no newsstands were raided, nor were any publications seized. The ACLU disagrees and argues that the publications were constructively seized and that the plaintiffs have standing to bring this action.

## II. Standing: Who Can Sue?

■ The threshold consideration in this case is whether the ACLU and the several named plaintiffs are the proper parties to this litigation. Standing is a jurisdictional question and must be determined at the outset, for it concerns the power of federal courts to hear and decide cases. *See Weiner v. Bank of King of Prussia,* 358 F.Supp. 684, 695 (E.D.Pa.1973). The standing to sue doctrine is a legal requirement that the plaintiffs have been injured or threatened with injury by the governmental action complained of. In essence, a party must have a sufficient stake in a justiciable controversy to obtain judicial resolution of that controversy. *See Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). The standing requirement is satisfied only if the plaintiffs have a legally protectible and tangible interest at stake in the litigation, for the essence of standing is that no person is

entitled to assail the constitutionality of an act unless he is adversely affected.

■ The plaintiffs in this case are the American Civil Liberties Union Greater Pittsburgh Chapter and three named individuals. The ACLU is a non-profit organization chartered in the Commonwealth of Pennsylvania. It has a local membership of approximately 2,000 persons and is dedicated to the preservation of constitutional rights. The ACLU avers that its members have an interest in being able to freely obtain constitutionally protected publications and, as citizens in a free society, to determine for themselves whether it offends their personal sensibilities.

Samuel Moore, a named plaintiff, is a resident of the City of Pittsburgh. Moore testified that he frequently purchased *Hustler* magazine for its religious satire. Barbara Paull, also a named plaintiff, is a free-lance journalist who frequently writes on topical issues. Paull testified that as a writer her "livelihood depends on being informed" and that she has an interest in the publication to determine if she wishes to write about the edition. Doctor Daniel Milberg, also a named plaintiff, is a Professor of Psychology at the University of Pittsburgh. Doctor Milberg teaches courses in human sexuality and the psychology of women. Doctor Milberg testified that in his classes he often discusses matters of current interest and that he was particularly interested in the publication after it became controversial. Each of the named plaintiffs attempted to purchase a copy of *Hustler* magazine after the Mayor released his letter, but were unable to do so.

Broadly put, the question the City raises is whether these litigants are entitled to have this Court decide the merits of the legal controversy before it. The City alleges that, without the vendors as named plaintiff, the ACLU cannot demonstrate the type of concrete and particularized injury to themselves sufficient to confer standing. This Court does not agree.

obscenity laws against all those who persist in selling this magazine.

Very truly yours
/s/ Richard S. Caliguiri

Prior decisions of the United States Supreme Court have unequivocally established an independent right to receive information sought to be communicated as a protected right under the First Amendment. *See generally Virginia Pharmacy Board v. Consumer Council*, 425 U.S. 748, 756, 96 S.Ct. 1817, 1822, 48 L.Ed.2d 346 (1975); *Procunier v. Martinez*, 416 U.S. 396, 408–09, 94 S.Ct. 1800, 1808–09, 40 L.Ed.2d 224 (1974); *Kleindienst v. Mandel*, 408 U.S. 753, 762–63, 92 S.Ct. 2576, 2581–82, 33 L.Ed.2d 683 (1972); *Lamont v. Postmaster General*, 381 U.S. 301, 85 S.Ct. 1493, 14 L.Ed.2d 398 (1965). In the case of *Virginia Pharmacy Board v. Consumer Council*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976), the Supreme Court has declared that "[f]reedom of speech presupposes a willing speaker. But where a speaker exist ... the [First Amendment] protection afforded is to the communication, to its source and its recipients both." *Id.* at 756, 96 S.Ct. at 1822 (footnote omitted). In other words, the First Amendment protects the right to receive information as well as the right to disseminate information.

The *Virginia Pharmacy Board* case involved a suit brought by a consumer group to strike down a state statute which prohibited advertisement of prescription drug prices by licensed pharmacists. There the Supreme Court held that, "[i]f there is a right to advertise, [protected under the First Amendment], there is a reciprocal right to receive the advertising, and it may be asserted by ..." those seeking to receive it. *Id.* at 757, 96 S.Ct. at 1823 (footnote omitted).

Likewise, in this case, the plaintiffs assert an independent right to receive information. The reciprocal right to receive information stands on its own bottom and makes irrelevant the vendors failure to assert their right to disseminate. Both the right to receive and the right to distribute information equally enjoys constitutional protection. Any other construction of free speech would unnecessarily stifle effective First Amendment protection. For fear of reprisals, vendors who are subject to state and local licensing may hesitate to challenge an unconstitutional abridgment of their right to distribute protected information. Also, the pecuniary benefits gained by a vendor exercising his right to free speech, in a particular case, may be far exceeded by the cost and the time consumed in litigation. These factors weigh heavily against the enforcement of First Amendment rights by the vendors. Absent the enforcement of the reciprocal right to receive information, by potential recipients such as the plaintiffs in this case, abridgment of the First Amendment would often go unchecked. Hence, it is important that those who desire to receive a constitutionally protected publication have a legally protectible and tangible interest in opposing the suppression of free speech. A fortiori, the suppression of free speech may be assailed by those who desire to receive a protected publication. In this case, the named plaintiffs have clearly met the standing requirement.

### III. Prior Restraint.

 The First Amendment prohibits the imposition of a restraint on a publication before it is published or distributed. The doctrine of prior restraint, reduced to its simplest form, is that no prior restraint may prevent exercise of free speech, although criminal or civil action may result from that speech. This doctrine has been long established. *Near v. Minnesota*, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931).

 The City claims that there was no prior restraint of free speech in this case because the Mayor did not seize or order the seizure of *Hustler* magazine, but the retailers voluntarily withdrew the publication from their shelves. In sum, the City argues that since no seizure occurred that could result in a prior restraint, there was no constitutional violation. This argument misses the mark. To accept the City's position would require this Court to ignore the substance and effect of the actions taken by Mayor Caliguiri.

The record in this case amply demonstrates that the Mayor deliberately set

about to achieve the suppression of a publication he personally deemed objectionable and succeeded in his aim. The parties stipulated that prior to the release of the Mayor's letter, May, 1984 editions of *Hustler* magazine were available at local newsstands. Shortly thereafter, *Hustler* magazine could not be locally obtained. The testimony established that the City dispatched plain clothes police officers to survey newsstands to monitor and assure compliance with the Mayor's mandate. Several vendors testified that they removed the publication because of the Mayor's letter. In addition, the plaintiffs testified that they attempted to purchase the magazine after the Mayor's edict, and could not do so.

Against this evidence, this Court rejects as untenable the City's position that the vendors voluntarily removed the publications from their shelves. When confronted with threats of prosecution, as we are in this case, the Supreme Court has held that courts are to look through form to the substance to determine if informal censorship has sufficiently inhibited circulation of a protected publication. *See Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67, 83 S.Ct. 631, 637, 9 L.Ed.2d 584 (1963).

In *Bantam Books*, 372 U.S. 58, 83 S.Ct. 631, the Supreme Court examined the legality of a state created commission whose practice was to notify a distributor that it had received books or magazines that the commission found objectionable for distribution to youth. After receiving the notice, the distributors would stop further circulation. Thereafter, a local police officer would visit the distributor to determine what action had been taken. The Supreme Court held that the scheme in *Bantam Books* constituted an impermissible prior restraint on First Amendment freedoms. In particular, the Court noted that the distributors and retailers, by reason of intimidation and threat of prosecution, were forced to cease selling the publications.

The method adopted and enforced by Mayor Caliguiri in this case is indistinguishable from the prior restraint in *Bantam Books*. The Mayor, through the use of a calculated scheme that involved public announcements and systematic police visits to retailers effected a "constructive seizure" of *Hustler* magazine. The evidence in this case conclusively establishes that the acts of the City officials directly and designedly stopped circulation of *Hustler* magazine throughout the City of Pittsburgh.

In this case, like the cases of *Bantam Books*, 372 U.S. at 68, 83 S.Ct. at 638, and *Penthouse International, Ltd. v. McAuliffe*, 610 F.2d 1353, 1360 (5th Cir.1980), the vendors would have violated no law if they had refused to cooperate with the Mayor's directives. In *Bantam Books* and *Penthouse* the courts nonetheless held that compliance was not voluntary. Similarly, the vendors' compliance with Mayor Caliguiri's directives in this case was not voluntary. The law does not exist in a vacuum apart from the facts and courts are not required to blind themselves to matters of human experience. As the Supreme Court noted in *Bantam Books*, "[p]eople do not lightly disregard public officers' thinly veiled threats to institute criminal proceedings against them if they do not come around...." *Id.* 372 U.S. at 68, 83 S.Ct. at 638. Both human experience and the facts of this case demonstrates that the mere threat of police action will in most cases result in the threatened person desisting from the contemplated action, although the proposed action may be entirely legal. *See United Artists Corporation v. Gladwell*, 373 F.Supp. 247 (N.D.Ohio 1974). On this point, this case is particularly instructive.

In this case, the Mayor's letter and the police surveillance can be reasonably interpreted as conveying to the vendors that some form of punishment would follow if they failed to accede to the Mayor's official request. To employ coercive state power to stifle protected speech, as was done in this case, amounts to an informal system of prior restraint. The plaintiffs have demonstrated by a clear preponderance of the evidence that the distribution of a publication, which has not been judicially determined to be obscene, has been deterred by

the Mayor's official pronouncements. Thus, this Court concludes that the procedures employed by the City officials in this case has resulted in a "constructive seizure" of *Hustler* from the shelves of Pittsburgh's newsstands and created an informal system of prior restraint. *See Penthouse International, Ltd.,* 610 F.2d at 1361. *Accord, Hammerhead Enterprises, Inc. v. Brezenoff,* 707 F.2d 33, 39 (2d Cir. 1983); *Drive In Theatres, Inc. v. Huskey,* 435 F.2d 228, 230 (4th Cir.1970); *United Artists Corporation v. Gladwell,* 373 F.Supp. 247, 250 (N.D.Ohio 1974).

## IV. Constitutionality of Mayor's Prior Restraint.

A judicial finding of prior restraint does not end this Court's inquiry. For prior restraints are not per se unconstitutional. *See Bantam Books,* 372 U.S. at 70 n. 10, 83 S.Ct. at 639 n. 10; *Near v. Minnesota,* 283 U.S. 697, 716, 51 S.Ct. 625, 631, 75 L.Ed. 1357 (1931). Our courts have never recognized an absolute or unbridled right of free speech. However, "[a]ny system of prior restraint ... 'comes to this Court bearing a heavy presumption against its constitutional validity.'" *See Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 558, 95 S.Ct. 1239, 1246, 43 L.Ed.2d 448 (1975), *citing, Bantam Books,* 372 U.S. at 70, 83 S.Ct. at 639. (citations omitted).

Prior restraints of free speech require the most exigent circumstances for justification. *See Near v. Minnesota,* 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1932). To be lawful, a system of prior restraint "first, must fit within one of the narrowly defined exceptions to the prohibition against prior restraint, and, second, must have been accomplished with procedural safeguards that reduce the danger of suppressing constitutionally protected speech". *Southeastern Promotions,* 420 U.S. at 559, 95 S.Ct. at 1246; *citing, Bantam Books,* 372 U.S. at 71, 83 S.Ct. at 639. It is against this background of judicial analysis of prior restraint, that any system of civil regulation of supposedly obscence material must be reviewed, bearing in mind that until there has been a judicial determination of obscenity, there is a strong presumption that words and speech are within the range of First Amendment protection.

The case before this Court does not present an established judicial exception to the doctrine of prior restraint. The City did not seek to reasonably regulate the time, place or manner of a facility. *See Cox v. New Hampshire,* 312 U.S. 569, 574, 61 S.Ct. 762, 765, 85 L.Ed. 1049 (1971). Nor is there a need to balance competing equities because the rights of others may be infringed. *See Kovacs v. Cooper,* 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949). This is not a captive audience case. *See Lehman v. City of Shaker Heights,* 418 U.S. 298, 304, 94 S.Ct. 2714, 2717, 41 L.Ed.2d 770 (1974). Nor was this a case of a mere temporary bar of one's First Amendment rights pending necessary judicial proceedings. *See Heller v. New York,* 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973).

Clearly, the Mayor's conduct does not fall within a recognized judicial exception to the doctrine of prior restraint. The city does not argue to the contrary. Nor was the restraint in this case accomplished with the procedural safeguards required by law. The Supreme Court has repeatedly held "that a system of prior restraint 'avoids constitutional infirmity only if it takes place under procedural safeguards designed to obviate the dangers of a censorship system.'" *See Southeastern Promotions,* 420 U.S. at 559, 95 S.Ct. at 1246, *citing, Freedman v. Maryland,* 380 U.S. 51, 58, 85 S.Ct. 734, 738, 13 L.Ed.2d 649 (1965).

Publications presumptively protected by the First Amendment enjoy substantial procedural safeguards before there can be a lawful "constructive seizure." The Supreme Court has held that the Constitution, at minimum, requires the imposition of a neutral, detached magistrate to make an independent judicial determination of obscenity, vel non, before the seizure of allegedly obscene material. *See Heller v. New York,* 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973); *Roaden v. Kentucky,*

413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973). This is true "because only a judicial determination in an adversary proceeding ensures the necessary sensitivity to freedom of expression ...." *See Freedman v. Maryland*, 380 U.S. 51, 58, 85 S.Ct. 734, 738, 13 L.Ed.2d 649 (1965). Otherwise, absent adequate procedural safeguards, a system of prior restraint runs afoul of the First Amendment.

Prima facie, the Pennsylvania obscenity statute provides the necessary procedural safeguards to ensure against the danger of a censorship system suppressing constitutionally protected speech. *See* 18 Pa.Cons. Stat. § 5903 (Purdon's 1973). The plaintiffs do not assail the constitutionality of the Commonwealth's obscenity statute; nor does this court address that question. It is enough to note that a valid state procedure for determining obscenity exists, but was not resorted to in this case. Herein lies the legal infirmity of the Mayor's actions.

The procedure adopted and enforced by Mayor Caliguiri was dramatic and devastating. His actions directly resulted in the suppression of every May, 1984, edition of *Hustler* magazine in the City of Pittsburgh. The Mayor's constructive seizure was accomplished prior to an independent determination by a neutral, detached magistrate or judge that the constructively seized publication was in fact obscene. The issue of obscenity was never examined by a judicial tribunal in advance of the Mayor's actions. To date, there has been no adjudication on the issue of obscenity.

In essence, Mayor Caliguiri unilaterally suspended the public's fundamental right of due process of law, such as adequate notice and an opportunity to be heard on the question of obscenity. These minimum procedural safeguards are clearly provided for in the Pennsylvania obscenity statute.[2] Moreover, the United States Supreme Court has held that these safeguards are constitutionally required. "For if seizures of books precedes an adversary determination of their obscenity, there is a real danger of abridgement of the right of the public in a free society to unobstructed circulation of non obscene books." *Bethview Amusement Corp. v. Cahn*, 416 F.2d 410, 412 (2d Cir.1969). In sum, the City's enforcement activities in this case, prior to an adjudication upon the issue of obscenity, amounts to an informal prior restraint in violation of the First and Fourteenth Amendment. Injunctive and declaratory relief against this form of prior restraint is clearly appropriate.

## V. Conclusion.

It is important to note that this is not an obscenity case. The issue of obscenity is not before this Court. Today, this Court does not address the question of whether the Easter edition of *Hustler* magazine is obscene under the state or local obscenity laws. Nor does this Court rule on the correctness of the Mayor's belief that the suspect edition of *Hustler* magazine is legally obscene. Likewise, that question is not before this Court because the proper mechanism for assessing the obscenity of a publication has not been engaged and no judge or jury has been requested to pass on the question of whether the Easter edition of *Hustler* magazine is legally obscene.

---

**2.** The Pennsylvania obscenity statute defines obscene offenses and provides injunctive and criminal remedies to curb its violation. The civil remedy provided for is as follows:

(g) **Injunction**—The attorney for the Commonwealth may institute proceedings in equity in the court of common pleas of the county in which any person violates or clearly is about to violate this section for the purpose of enjoining such violation. The court shall issue an injunction only after written notice and hearing and only against the defendant to the action. The court shall hold a hearing within three days after demand by the attorney for the Commonwealth, one of which days must be a business day for the court, and a final decree shall be filed in the office of the prothonotary within 24 hours after the close of the hearing. A written memorandum supporting the decree shall be filed within five days of the filing of the decree. The attorney for the Commonwealth shall prove the elements of the violation beyond a reasonable doubt. The defendant shall have the right to trial by jury at the said hearing. 18 Pa.Cons. Stat. § 5903 (Purdon's 1973).

What this Court does today is to condemn the Mayor's informal and unlawful prior restraint on the distribution of any supposedly obscene publication without first availing himself of the proper remedies provided by law. Even assuming that the suspect publication is obscene under the local or state obscenity laws, and that the Mayor acted in a good faith belief that the magazine was obscene, this Court's decision nonetheless rejects the notion that an elected public official can use unlawful means to achieve a lawful objective, i.e., to thwart the publication or distribution of obscene material. Today, this Court affirms the long standing principal, that as a nation of laws, our society rightfully expects its public officials to observe proper and lawful procedures in enforcing the law; lest we make a mockery of the concept of government by the people, for the people.

Moreover, this case points up the inherent vice of an informal system of censorship. Throughout these proceedings, the City has stringently maintained that the Mayor acted with great restraint by seeking voluntary compliance instead of instituting civil or criminal proceedings against the vendors. To this end, counsel for the City maintained that "it takes an extreme act of cowardice to require the Mayor to arrest four dollar an hour [wage earning retail clerks] so that others can enjoy First Amendment rights".

To be sure, the City raises salutory concerns. But the concerns expressed by the City in this case are not the proper focus of First Amendment objectives. It is the City's misplaced concerns, however, that pointedly illustrates the perils of prior restraint. For example, the Mayor's letter indicates that he had not actually reviewed the Easter edition of *Hustler* magazine prior to the issuance of his ban. The standards used to determine the obscenity of *Hustler* magazine was based on the Mayor's personal sensibilities, derived from a hearsay description of the magazine's contents, not from a judicial application of the legal standards provided for in the Pennsylvania obscenity statute. In this case, no judge, magistrate or jury was requested to rule on the question of obscenity; no notice was given; and no hearing was held. These are the proper concerns of fundamental fairness, due process of law and the First Amendment; rights that are not to be taken lightly. The record amply demonstrates that the concerns of due process of law played no role in the Mayor's unilateral determination that the publication was obscene. For this reason the Supreme Court has consistently denounced the power of public officials to censor in advance of actual expression, publication or circulation. In this regard, the Supreme Court has declared that "the danger of censorship and abridgement of our precious First Amendment freedoms is too great where officials have unbridled discretion over a forum's use. Our distaste for censorship—reflecting the natural distaste of a free people—is deep-written in our law." *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. at 553, 95 S.Ct. at 1243. For these reasons, this Court is compelled to grant the plaintiffs' petition for permanent injunction against the defendants in this case.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

AND NOW, to wit, this 25th day of April, 1984, in aid and support of the accompanying written Opinion and the previously rendered Bench Opinion, this Court makes the following specific Findings of Fact and Conclusions of Law:

### I. Findings of Fact.

1. The American Civil Liberties Union, Greater Pittsburgh Chapter, Inc., is a nonprofit organization, chartered in the Commonwealth of Pennsylvania and is dedicated to the preservation of constitutional rights.

2. The named plaintiffs, Samuel Moore, Barbara Paull and Daniel Milberg, are residents of the City of Pittsburgh who have purchased *Hustler* magazine on previous occasions and have a continuing interest and desire to purchase the same.

3. The defendant City of Pittsburgh is a Home Rule Charter Municipality organized pursuant to the laws of Pennsylvania.

4. Defendant Richard S. Caliguiri is the Mayor of the City of Pittsburgh.

5. On April 17, 1984, defendant Mayor Caliguiri directed a letter to the attention of all magazine and news dealers urging that they cease selling and immediately remove the 1984 Easter edition of *Hustler* magazine from their shelves and return the magazine to the publisher or distributor.

6. In addition, the defendant Mayor's letter threatened "a massive sweep of all newsstands and stores and the initiation of criminal proceedings under state or local obscenity laws against all vendors who persist in selling [the 1984 Easter edition of *Hustler*] magazine."

7. At no time prior to the issuance of the defendant Mayor's letter had the defendant City sought a judicial determination, before a proper judicial tribunal, on the issue of whether the 1984 Easter edition of *Hustler* magazine violated state or local obscenity laws.

8. Before the issuance of the defendant Mayor's letter, copies of the 1984 Easter edition of *Hustler* magazine could be obtained from magazine vendors within and from without the defendant City of Pittsburgh.

9. Immediately after the issuance of the defendant Mayor's letter, no copies of the 1984 Easter edition of *Hustler* magazine could be obtained within the defendant City, but they could be obtained outside the defendant City.

10. As a direct and proximate result of the directives contained in the defendant Mayor's letter, magazine vendors in the defendant City of Pittsburgh ceased and desisted from selling, circulating and distributing the 1984 Easter edition of *Hustler* magazine.

11. Defendant City police officers were dispatched to magazine vendors throughout the City both before and after the issuance of the defendant Mayor's letter to determine first, the availability of the 1984 Easter edition of *Hustler* magazine and second, to monitor compliance with the defendant Mayor's directives.

12. The parties in this litigation have stipulated that this case is ripe for the Court to resolve the plaintiffs' request for permanent relief.

## II. Conclusions of Law.

### a. Standing.

13. The plaintiffs in this action have a legally protectible and tangible interest at stake in this litigation by virtue of their desire to receive a presumptively protected publication.

14. The defendant Mayor's and the defendant City's actions in this case have caused and threatened and continues to cause and threaten the plaintiffs with irreparable harm and injury by a clear deprivation of their cognizable legal right to purchase, receive and read a presumptively protected publication, namely *Hustler* magazine.

15. The plaintiffs in this action have a constitutionally protected right to purchase, receive and read the 1984 Easter edition of *Hustler* magazine, which at all relevant times and at the present time presumptively enjoys First Amendment protection.

16. As potential recipients of *Hustler* magazine, a presumptively constitutionally protected publication, the plaintiffs herein have standing to bring this suit in the United States District Court for the Western District of Pennsylvania. *See Virginia Pharmacy Board v. Consumer Council,* 425 U.S. 748, 756, 96 S.Ct. 1817, 1822, 48 L.Ed.2d 346 (1975).

### b. Prior restraint.

17. The defendant Mayor's and the defendant City's police actions directly and designedly stopped the circulation and distribution of *Hustler* magazine in the City of Pittsburgh.

18. Although the vendors would have violated no law had they refused to accede to the defendant Mayor's official directive, their compliance with the defendant Mayor's directive was involuntary.

19. The defendant Mayor and the defendant City, through the use of a calculated scheme that involved public announcements and systematic City police visits to local vendors, effected a "constructive seizure" of *Hustler* magazine in the City of Pittsburgh which violated the constitutional rights of the plaintiffs. *See Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 67, 83 S.Ct. 631, 637, 9 L.Ed.2d 584 (1963).

20. In substance, the defendant Mayor's and the defendant City's "constructive seizure" of *Hustler* magazine, without the benefit of a prior judicial determination of obscenity, created an informal system of prior restraint contrary to the provisions of the First and Fourteenth Amendments to the United States Constitution. *See Penthouse International, Ltd. v. McAuliffe,* 610 F.2d 1353 (5th Cir.1980).

### c. Constitutionality.

21. The defendant Mayor's and the defendant City's conduct in this case does not fall within one of the recognized exceptions to the doctrine of prior restraint.

22. Publications such as *Hustler* magazine are presumptively protected by the First Amendment and enjoy substantial procedural safeguards before there can be a lawful "constructive seizure" of such publications. *Southeastern Promotions Ltd. v. Conrad,* 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975).

23. The United States Constitution requires the imposition of a neutral detached judicial officer to make an affirmative independent judicial determination of obscenity before the seizure of an allegedly obscene publication can be lawful. *Heller v. New York,* 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973).

24. On its face, the Pennsylvania obscenity statute provides constitutionally adequate safeguards to ensure against the dangers of the informal system of censorship practiced by the defendants in this case. 18 Pa.Cons.Stat. § 5903 (Purdon's 1973).

25. The defendant Mayor's and the defendant City's unlawful system of censorship "chilled" the First Amendment rights of publishers, distributors, vendors, retailers and potential recipients of *Hustler* magazine, a presumptively protected publication.

26. The defendant Mayor's threatened "massive sweep" and "initiation of criminal proceedings" against vendors of *Hustler* magazine, prior to a judicial determination that the Easter edition of *Hustler* magazine was in fact obscene, is unconstitutional because it ignored constitutionally required procedural safeguards.

27. The defendant Mayor's and the defendant City's unlawful system of prior restraint in this case amounts to an unconstitutional abuse of power in violation of the First and Fourteenth Amendments to the United States Constitution.

28. Injunctive and declaratory relief against the defendants' system of prior restraint in this case is appropriate and is therefore granted.

29. An appropriate order has been framed and filed in the above-captioned case.