**PHE, INCORPORATED dba Adam & Eve, et al., Plaintiffs,**

v.

**DEPARTMENT OF JUSTICE, et al., Defendants.**

**Civ. A. No. 90–693 (JHG/PJA).**

United States District Court, District of Columbia.

Nov. 14, 1991.

---

Bruce J. Ennis, Jr., Washington, D.C., for plaintiffs.

Thomas W. Millet, IV, David M. Souders, Washington, D.C., for defendants.

## MEMORANDUM OPINION

PATRICK J. ATTRIDGE, United States Magistrate Judge.

The plaintiffs, PHE, Incorporated and Philip D. Harvey, seek injunctive relief precluding their criminal prosecution under the federal obscenity statutes. The history and background of this litigation is found in *PHE, Inc. v. United States Dept. of Justice*, 743 F.Supp. 15 (D.D.C.1990). At issue are various motions seeking protective orders and orders compelling discovery responses.

In the first of these pending discovery motions, the plaintiffs seek a protective order "strictly limiting the use of PHE product reviews to this litigation and prohibiting dissemination of these materials to persons other than the attorneys and staff involved in this litigation."[1] They contend that they "have developed, at great expense, an independent review screening process to evaluate all material prior to distribution."[2] The process involves the submission of the products to be distributed to two independent reviewers who, in turn, provide PHE with their evaluation of the product in the light of the Supreme Court's *Miller v. California* test.[3] The plaintiffs contend that they have paid reviewers between $70.00 and $100.00 an hour and have expended over $426,000.00 on this process since implementing it in 1986. They allege that these reviews are confidential commercial research and that public dissemination would work to their detriment because competitors would get the benefit of the reviewers' critique at no cost to the competitors. Further, reviewers may be exposed to civil litigation if vendors disagree with the reviewer's evaluation of the product, and therefore, the potential for this litigation may impact on their ability to obtain otherwise qualified reviewers.

The defendants oppose the entry of a protective order, asserting that the plaintiffs have failed to demonstrate "good cause" as required by Rule 26(c) and that they have waived whatever rights they may have had to a protective order by releasing 50 reviews to defendants. With respect to the forms themselves, the defendants urge that the plaintiffs failed to establish that the review forms are "confidential commercial research", and, more importantly, that the plaintiffs have not identified any "specific harm" they will suffer if the reviews are made public. The defendants contend that the plaintiffs fears are based on speculation and conjecture and argue that the "plaintiffs are really seeking ... to withhold from public exposure the true nature of their distribution business."[4]

---

1. Plaintiffs' Memorandum in Support of Motion for a Protective Order, at 1.

2. *Supra* note 1.

3. *See Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973).

4. Defendants' Memorandum in Opposition to Plaintiffs' Motion for a Protective Order, at 3, 4, 7, 8.

■ To establish "good cause" a movant must articulate a real and specific harm, *Avirgan v. Hull*, 118 F.R.D. 257, 261–62 (D.C.C.1987), and not just "stereotyped and conclusory statements." *Id.* "With respect to the claim of confidential business information, this standard demands that the company prove that the disclosure will result in a clearly defined and very serious injury to its business." *John Does I–VI v. Yogi*, 110 F.R.D. 629, 632 (D.C.C.1986) (quoting *United States v. Exxon Corp.*, 94 F.R.D. 250, 251 (D.D.C 1981)).

■ The plaintiffs' argument that competitors will have the benefit of their financial investment is defective for two reasons. First, it presumes that competitors do not engage in the same type of screening at their own expense, a premise not argued or established. Secondly, the plaintiffs use the reviews to determine which products *not to distribute* based on a reviewer's judgment that the product violates one of the *Miller* criteria. If a competitor relies on that same judgment, it too forgoes the opportunity for profit by not distributing that product; thus, disclosure has not operated to the plaintiffs' economic disadvantage. It is apparent, however, that the real reason that the plaintiffs engage in this prophylactic endeavor is to provide them "with a unique and innovative defense in the event of [prosecution]" and a ready supply of expert witnesses. Letter from PHE to reviewer, dated June 1, 1989 (Defendants' Exhibit 145).

Moreover, the plaintiffs cannot disclose some reviews without limitations and, thereafter, seek to put limits on an opponents' use of other similar reviews. Once a party voluntarily discloses documents without limitations, it is precluded from objecting on the grounds of confidential commercial research to full and complete disclosure of similar documents. 8 *Wright & Miller, Federal Practice & Procedures* § 2035 at 262–63 (1970). Nor is the plaintiffs' argument that disclosure will bring about litigation against reviewers persuasive. This argument is wholly speculative and does not rise to the level of specific real harm required to be shown for entry of a protective order.

The plaintiffs also move to include the reviewers' rough notes within the bounds of a protective order as well as company records which record the results of the experts' reviews. The plaintiffs rely on the same arguments urged in support of their motion with respect to the review forms.

These arguments are equally unpersuasive with respect to the issue of "good cause" as to these documents, and therefore, these motions are denied.

The next series of motions concern the adequacy of the plaintiffs' responses to the defendants' second set of interrogatories, and the plaintiffs' motion for a protective order with respect to the defendants' third discovery requests consisting of requests for admissions and interrogatories that are directed separately to the plaintiffs.

Rather than respond separately to the plaintiffs' motion for a protective order, the defendants have moved to compel further answers to the plaintiffs' partial objections to their second interrogatories and have incorporated in that motion their objections to the plaintiffs' motion for a protective order, treating their two waves of discovery requests interchangeably.

With regard to the plaintiffs' refusal to respond, seriatim, to their third discovery requests, the defendants argue that the only legitimate grounds for failure to respond is either relevancy or privilege. They argue that the discovery is unquestionably relevant and that in so far as privilege is concerned, Federal Rule of Civil Procedure 36(b) makes any admission pursuant to a Request for Admission inadmissable against that party in any other proceeding. Therefore, the defendants conclude the plaintiffs' concern regarding "potential effect [in] the criminal case, is ... unwarranted." [5]

In response, PHE and Harvey assert that the third set of interrogatories "seek[s] the plaintiffs' theories concerning the application of the *Miller v. California* test to the specific items at issue in Utah," which mat-

---

**5.** Defendants' Motion to Compel Discovery, or, Alternatively, for Stay, at 12.

ters are protected by the work product and attorney-client privileges;[6] and, furthermore, that the protection afforded by Federal Rules of Civil Procedure 36(b) is illusory in the context of this case because "admission[s] can improperly facilitate [the prosecutor's] preparation of the criminal case."[7]

The defendants argue that the "good faith of the prosecutors lies at the heart of this [case]"[8] and that since the discovery requests are unquestionably relevant and arguably subject to Harvey's Fifth Amendment privilege, the Court should stay these proceedings pending removal of the discovery impediments.

■ The defendants' dire need of responses with respect to their third discovery requests in order to defend the good faith of the prosecutors, which they allege lies at the heart of this matter, rings somewhat hollow when one looks at the specific information requested. It is more than coincidental that the discovery requests are specific as to titles and material solely under indictment in Utah. It is the Court's understanding that the bad faith of the prosecutors was specifically challenged following the return of an indictment in Utah, and that the district judge denied the present plaintiffs' motion to dismiss the indictment for bad faith and vindictive prosecution. Therefore, the defendants' honor respecting the Utah material has been vindicated. Accordingly, to the extent that they seek admissions and contentions of the plaintiffs with respect to the material under indictment in Utah, their discovery requests overreach. The defendants' right to discovery is not as "all encompassing" as they allege. "It is well established that a litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit to avoid the restrictions on criminal discovery and, thereby obtain information he

might not otherwise be entitled to for use in a criminal suit. *McSurely v. McClellan,* 426 F.2d 664, 671, 672 (D.C.Cir.1970).

The defendants' need for information regarding the very material under indictment in Utah is not as necessary or critical as they claim, so as to require the Court to reconsider its previous denial of the defendants' request to stay these proceedings.

However, the fact that the civil case is not stayed does not mean that discovery must proceed in the same way as as ordinary civil litigation. The court must not only be concerned with the general consideration of whether the real purpose of the civil discovery is to obtain information that is unavailable directly in a criminal proceeding but with the further question whether to permit any discovery of the type that requires the criminal defendant to testify for this obviously involves aspects of the privilege against self-incrimination. *Gordon v. Federal Deposit Insurance Corporation,* 427 F.2d 578, 580 (D.C.Cir.1970) (footnotes omitted).

This leads us to consideration of the plaintiffs' responses to the defendants' second set of interrogatories wherein the plaintiffs raise "General Objection No. 5" which states:

Plaintiffs object ... to the extent they request information ... on the merits of the criminal proceeding against plaintiffs now pending in Utah. Plaintiffs are willing to respond to such interrogatories and document request pursuant to an appropriate protective order.[9]

In opposition to the defendants' motion to compel the plaintiffs reallege "that they *would* provide ... this information pursuant to an appropriate protective order to protect against misuse of civil dis-

---

6. Plaintiffs' Memorandum in Opposition to Defendants' Motion to Compel Discovery, or, Alternatively, For Stay, at 16.

7. *Supra* note 6, at 16 n. 21 (citing *Gordon v. Federal Deposit Ins. Corp.,* 427 F.2d 578, 581 (D.C.Cir.1970)).

8. *Supra* note 5 at 5.

9. Plaintiffs' Responses and Objections to Defendants' Second Set of Interrogatories and Requests for Production of Documents to Plaintiffs, at 3.

covery." [10] However, the plaintiffs, nonetheless, reserve the right to require the defendants to prove in any criminal prosecution that the discovery material they propose to furnish was not obtained as a consequence of these civil discovery proceedings.[11]

. ▮ Unlike the defendants' third discovery requests, the defendants' second set of interrogatories are not specifically directed to the material under indictment in Utah with the exception of Interrogatory 7 and part of Interrogatory 9. To the extent that responses to these discovery requests may require the defendants to invoke their Fifth Amendment privilege, they must affirmatively assert it.[12] Nor does the fact that the defendants in this civil proceeding may obtain corporate documents which may be of use in later criminal proceedings lead to the conclusion that the government is misusing the civil discovery proceedings. We must keep in mind that it was the corporate and individual plaintiffs who brought this action seeking injunctive relief against the alleged threat of governmental misuse of power charging that the defendants are acting in bad faith and in a vindictive manner. The government defendants are entitled to challenge that charge and to that end obtain from the plaintiffs documents which may be relevant or which may lead to the discovery of relevant evidence on these serious charges. On the other hand, the courts should not permit the potential for civil discovery to interfere with a person's constitutional right, whether individual or corporate, to seek legal redress from the courts. The process requires a balancing of the plaintiffs' (criminal defendants') right to challenge a threatened government action and the government defendants' need for access to evidence that may rebut the plaintiffs' allega-

tions. It seems to me that to the extent that the individual plaintiff believes that his responses to the defendants' discovery requests may require him to provide evidence of self-incrimination, he has a built-in protection—the Fifth Amendment not, as will be discussed later, a court imposed protective order. Once that constitutional protection is invoked, that avenue of civil discovery is no longer available. However, that does not mean that all discovery terminates for, in so far as the corporate plaintiff is concerned, a corporation, in general, has no Fifth Amendment right against self-incrimination and, therefore, to that extent the corporation must cooperate with an opponent's legitimate discovery requests. Nor can this be said to be a "misuse" of the civil discovery tools for it appears that the government could obtain, at the very least, the same corporate documents in a criminal proceeding through the use of a grand jury subpoena as in a civil proceeding by means of a document request.

▮ A protective order precluding the discovered material from being used outside the instant litigation is not the answer. In effect, as the government argues, the plaintiffs are seeking "use immunity," notwithstanding the plaintiffs' protests to the contrary, which the courts have no authority to grant.[13] If the individual plaintiff has a Fifth Amendment claim against self-incrimination, he must raise it and not look to the courts in an attempt to nuzzle an opponent's use of material obtained in legitimate civil discovery. "The Federal Rules of Civil Procedure create a statutory presumption in favor of open discovery extending even to those materials not used at trial." *John Does I–VI v. Yogi*, 110 F.R.D. at 632 (citations omitted).

**10.** Opposition, at 3; Plaintiffs' Reply to Defendants' Opposition to Plaintiffs' Second Motion for a Protective Order, at 2, 3.

**11.** Plaintiffs' Reply, *Supra* note 10, at 8.

**12.** Although a corporation does not possess a Fifth Amendment right against self-incrimination, "a more 'troublesome question' [arises] ... if the corporation could show that no one could answer the interrogatories directed against it

without incriminating himself." *Gordon* 427 F.2d at 580 (citing *United States v. Kordel*, 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970)).

**13.** *Andover Data Servs. v. Statistical Tabulating Corp.*, 876 F.2d 1080, 1084 (2d Cir.1989), *Earl v. United States*, 361 F.2d 531, 534 (D.C.Cir.1966), *cert. denied*, 388 U.S. 921, 87 S.Ct. 2121, 18 L.Ed.2d 1370 (1967).

Therefore, the plaintiffs' second motion for a protective order will be denied and plaintiffs are directed to, seriatim, fully respond to the defendants' second set of interrogatories or assert their Fifth Amendment privilege. The Court declines the plaintiffs' proposal to, in effect, grant them "use immunity," a privilege reposited solely with the Executive Branch.

The next motion is that of the plaintiffs, filed May 1, 1991, seeking an order compelling discovery responses. The plaintiffs allege in that motion that the defendants failed to comply with their Rule 37 document request and subpoena duces tecum served on the Postal Service. The defendants counter that they have responded, that documents responsive to some requests do not exist and that the plaintiffs now seek documents never previously requested. In reply the plaintiffs challenge the governments' assertions. The charges and countercharges dragged on in surreplies and surrebuttals filed months later. Each filing is accompanied by reams of exhibits purporting to support and document an allegation. Rather than seeking to clarify this discovery issue, the parties through their self-righteous tenacity have succeeded in creating needless chaos for themselves as well as the Court.

To the extent any discovery may be privileged, that issue is now moot for the defendants stated that they are

> willing to permit inquires into issues surrounding the initiation of the investigations concerning plaintiffs and the results of those investigations, including the reasons for pursuing indictments or declining prosecution.
>
> Additionally ... we are willing to waive [any] privilege concerning Department policies and their application to plaintiffs....
>
> Plaintiffs would be allowed access to the information most relevant to their claims of bad faith prosecution and investigation inasmuch as the motivations of the prosecutors would be subject to complete inquiry without assertion of the qualified privileges which otherwise attach. Plaintiffs would also have a full opportunity to explore the application to themselves of Department policies concerning multidistrict litigation.
>
> [However], [t]he protection order ... [should] ... carve out from inquiry matters [of] operational details going directly to the actual or potential prosecution of the plaintiffs, including the evidence available ... and trial strategies, the identity of witnesses and informants [and] the actual conduct of the investigations and prosecutions on a day to day basis.... [14]

On February 7, 1991, the district judge, although denying the defendants' motion for a complete stay of discovery, did otherwise grant the defendants' motion for a protective order precluding the plaintiffs from "discover[ing] the identities of complainants or potential witnesses in the open investigation in Kentucky or to penetrate the grand jury proceedings in North Carolina," but otherwise allowing motivation and multidistrict departmental policy discovery subject to the protective order sought by the defendants. *PHE, Inc. v. United States Dept. of Justice,* No. 90–693 (Order filed February 7, 1991, at 2).

■ The defendants may not now renege on their stipulation nor quibble with the Court's order. This order and stipulation is equally applicable to the United States Postal Service, although not a named party to these proceedings, since they are represented by the same counsel and are admittedly part of the criminal prosecution team. Moreover, to the extent that the failure to accompany the Rule 45 subpoena to the Postal Service with a check rendered the subpoenas technically defective, the subsequent tender of the check corrected any deficiency; therefore, the subpoena duces tecum is considered valid and enforceable but, nonetheless, subject to the protective order of February 7, 1991.

To lay to rest any misunderstanding as to what documents exist and which do not exist, the defendants shall file responses to the plaintiffs' discovery request specifically

---

**14.** Defendants' Motion for a Protective Order, at 10, 11 (filed September 21, 1990).

identifying those categories of documents which after diligent inquiry they believe do not exist. Moreover, to the extent that Inspector Kenney's investigative log contains information within the scope of the February 7, 1991 Order, it shall be produced. If necessary it may be redacted to protect information relative to an on-going investigation.

Further, the deponents, Ward, McCullough and Jones shall respond to the deposition questions put to them. As earlier stated, the defendants specifically waived any and all privileges the government may have that is otherwise within the realm of appropriate inquiry.

Lastly, since the defendants have not responded to the plaintiffs' argument regarding the Privacy Act, the Court assumes that the defendants concede that this is a proper area of inquiry subject to a protective order, therefore, the Court will sign the protective order submitted by the plaintiffs dealing with the Privacy Act aspects of this case.

That brings us to the defendants' motions to compel or in the alternative to dismiss filed July 1, 1991. The defendants contend that Harvey, as PHE's Rule 30(b)(6) designee, declined to answer questions on the grounds of self-incrimination. In response, the plaintiffs assert that "many of the questions ... were objected to because of the *attorney-client* privilege" and then proceed to conclude that since the defendants did not raise that issue, it is not legitimately before the Court for resolution, and that the Court's decision regarding the plaintiffs' pending motions for protective orders will resolve all issues that "explicitedly apply to discovery in general, and to 'deposition and hearing transcripts' in particular."

Earlier in this memorandum, the Court discussed and resolved the issue of protective orders sought by the plaintiffs. Therefore, the defendants' motion to compel is granted and at a reconvened deposition, the plaintiffs shall respond to relevant inquiry in the absence of an otherwise articulated legal reason for not doing so. As to the fifteen questions to which the attorney-

client privilege was invoked, the parties did in later pleadings argue the merits of that issue, therefore, the Court shall resolve that matter.

The elements of the attorney-client privilege are reported in this Circuit's definitive discussion of that issue, *In re Sealed Case*, 737 F.2d 94 (D.C.Cir.1984). Pertinent to the questions under discussion in this case, is the Court's reiteration of its holding that "when an attorney conveys to his client facts acquired from other persons or sources, those facts are not privileged." *Id.* at 99 (quoting *Brinton v. Department of State*, 636 F.2d 600, 604 (D.C.Cir.1980), *cert. denied*, 452 U.S. 905, 101 S.Ct. 3030, 69 L.Ed.2d 405 (1981)).

The purpose of the privilege is to promote complete and candid communications between client and attorney to allow attorneys to render informal, sound legal advise. *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). However, the privilege is an exception to the fundamental principle that discovery should be liberal and broad so as to further the search for truth. *Weil Ceramics & Glass Inc. v. Work*, 110 F.R.D. 500, 504 (E.D.N.Y.1986). Moreover, the party asserting the privilege bears the burden of proving each element of the privilege. Although it protects communications from an attorney to a client, it does so only to the extent the attorney's communication would reveal confidential client communications. *In re Sealed Case*, 737 F.2d at 99.

Regarding PHE deposition questions 5, 8, 9, 12, 13, 72, 73, 74, 75, and Harvey deposition questions 1, 9 and 10, the plaintiffs have not established that "the communication relates to a fact of which the attorney was informed (a) *by his client*." *Id.* (emphasis added). "It remains the claimant's burden ... to present to the court sufficient facts to establish the privilege; the claimant must demonstrate with reasonable certainty ... that the lawyer's communication rested in significant and inseparable part on the client's confidential disclosure." *Id.* (citations omitted). This they have failed to do.

■ Regarding PHE question 70 and Harvey questions 2 and 8, the Court is satisfied that the plaintiffs have made the requisite showing. It is clear that the questions seek the nature of the advise and information that the attorneys provided after the clients contacted the lawyers for legal assistance.

Accordingly, the motion to compel will be granted as to PHE deposition questions 5, 8, 9, 12, 13, 72, 73, 74 and 75 and Harvey's depositions questions 1, 9 and 10. The motion will be denied as to PHE question 70 and Harvey questions 2 and 8.

Lastly, the defendants seek an order compelling answers to defendants' first interrogatory 17, defendants' second interrogatories 1, 2, 3, 4 and 5 and compelling production of corporate income tax records.

■ In response to the interrogatories, the plaintiffs object on the basis of burdensomeness and pending the Court's ruling on their request for a protective order. As earlier discussed, the plaintiffs' motion for an "immunity" protective order is denied, and as to the plaintiffs' contentions that responsive answers would be burdensome, the Court disagrees. The plaintiffs admit that their distribution operations are computerized. Although no program may presently exist to obtain the information requested, the Court is satisfied that with little effort the plaintiffs can retrieve the necessary and appropriate information. The plaintiffs efforts to demonstrate "good faith" by "standing ready" to provide information about materials it presently possesses is inadequate, the defendants are entitled to pursue their own discovery utilizing the discovery tools and timing they feel best suits their litigation strategy. Nor are the plaintiffs' contentions that compliance would be inordinately expensive persuasive. The plaintiff has not spared the treasury in aggressively pursuing its litigation goals in this suit which it filed. It would not be unreasonable to require the plaintiffs to incur modest additional expenditures so as to provide the defendants with the discovery necessary to establish that they are not acting in bad faith and vindictively.

■ And in conclusion, since counsel for the plaintiff concede the relevancy of the corporate tax information but condition release on an appropriate protective order (which the Court has declined to enter), the defendants' motion to compel production of corporate tax returns will be granted.